# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Case No: |
| | : | |
| v. | : | |
| | : | **VIOLATIONS:** |
| | : | |
| **WILLIAM WRIGHT WATSON,** | : | **18 U.S.C. § 231(a)(3)** |
| | : | **(Civil Disorders)** |
| **Defendant.** | : | |
| | : | **18 U.S.C. § 1752(a), (b)(1)(A)** |
| | : | **(Restricted Building or Grounds with a** |
| | : | **Deadly or Dangerous Weapon)** |
| | : | |
| | : | **40 U.S.C. § 5104(e)(2)** |
| | : | **(Violent Entry or Disorderly Conduct)** |

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT
## AND ARREST WARRANT

I, Matthew Minshew, being first duly sworn, hereby depose and state as follows:

## PURPOSE OF AFFIDAVIT

1.      This Affidavit is submitted in support of a Criminal Complaint charging WILLIAM WRIGHT WATSON with violations of 18 U.S.C. § 231(a)(3), 18 U.S.C. § 1752(a) & (b)(1)(A), and 40 U.S.C. § 5104(e)(2).  I respectfully submit that this Affidavit establishes probable cause to believe that WATSON (1) committed or attempted to commit, any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructed, delayed, or adversely affected the performance of any federally protected function; (2) did knowingly enter or remain in any restricted building or grounds without lawful authority, or did knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct, and during and in relation

1

to the offense, used and carried a deadly and dangerous weapon; and (3) did willfully and knowingly engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of any deliberations of either House of Congress.  Specifically, on or about January 6, 2021, WATSON, while carrying a canister of mace, knowingly and willfully joined a crowd of individuals who forcibly entered the U.S. Capitol and impeded, disrupted, and disturbed the orderly conduct of business by the United States House of Representatives and the United States Senate.

## BACKGROUND OF AFFIANT

2.      I have been employed by the Federal Bureau of Investigation (FBI) as a Special Agent since May 2016. During my employment with the FBI, I have received training and experience in investigating various crimes, to include violations relating to Violent Crime, Violent Crimes Against Children, and International and Domestic Terrorism.  I am currently assigned to the Mobile Field Office, Auburn Resident Agency.  In these investigations, I have been involved in the application for and execution of numerous arrest and search warrants related to the aforementioned criminal offenses.  Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology utilized by violent criminal offenders.

3.      Unless otherwise stated, the information in this Affidavit is either personally known to me, has been provided to me by other individuals, or is based on a review of various documents, records, and reports.  Because this Affidavit is submitted for the limited purpose of establishing probable cause to support an application for an arrest warrant, it does not contain every fact known by me or the United States.  The dates listed in this Affidavit should be read as "on or about" dates.

## **PROBABLE CAUSE**

### *Background*

4. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.

5. On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public.

6. On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

7. As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside. The crowd included many people who expressly objected to the conduct of the proceedings to certify the vote

count of the Electoral College of the 2020 Presidential Election, and who expressly stated that their purpose was to stop or disrupt those proceedings.

8.      At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades, and past officers of the U.S. Capitol Police, including by engaging in assaultive and abusive conduct towards officers of the U.S. Capitol Police who were lawfully attempting to block access to the U.S. Capitol.  The crowd then advanced to the exterior façade of the building.  The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.

9.      At such time, the certification proceedings, specifically, the proceedings in the House and Senate to address the objection, were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

10.     Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers.  Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume

until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured. The proceedings resumed at approximately 8:00 pm after the building had been secured. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

11. On July 2, 2020, WILLIAM WRIGHT WATSON, a resident of Alabama, was charged by the state of Alabama with possession of controlled substances and drug trafficking of LSD and Marijuana, felonies under Alabama law.

*WATSON's Participation in the U.S. Capitol Riot*

12. On January 11, 2021, WATSON was interviewed by your affiant after waiving his *Miranda* rights while in the custody of state of Alabama law enforcement officials for violating his bond in the state criminal case described above by traveling to Washington, D.C., on January 5, 2021. During the interview, WATSON described his participation in the breach of the U.S. Capitol on January 6, 2021. The interview was recorded.

13. During the interview, among other things, WATSON stated the following:

    a. During the beginning of the interview, WATSON denied any role in any violence, trespassing, vandalism, or other "criminal activity" at the U.S. Capitol on January 6, 2021. He proceeded, however, to describe his activities in and around the U.S. Capitol building that day.

    b. According to WATSON, WATSON and Person 1, WATSON's friend, left Auburn, Alabama around 7:00 p.m. on January 5, 2021, and drove through the night to Washington, D.C., arriving around 6:30 a.m. on January 6, 2021. WATSON stated he went to Washington, D.C., to "support the patriots, support Trump, support freedom." WATSON continued, "I guess the overriding thing for why we were

5

there that day is because they were certifying the fraudulent election that day, and so we, to protest that."

c.    WATSON stated that after arriving in Washington, D.C., early in the day on January 6, 2021, he was by the Ellipse, the area south of the White House. According to WATSON, at some point, he saw others walking toward the U.S. Capitol and WATSON followed. WATSON worked his way to the front of the crowd at the stage which had been set up on the west side of the U.S. Capitol Building for the Presidential Inauguration. WATSON also stated that he had been following the schedule Alex Jones[1] had promoted, which, according to Watson, directed others to meet at the Ellipse at 9:00 a.m. and then the U.S. Capitol at 1:00 p.m. to protest while Congress was certifying the Electoral College votes.

d.    WATSON stated he did not bring anything to the event, except a bottle of water. He further stated that he brought a taser with him, but left it in the car.

e.    WATSON stated that, at the law enforcement barriers at the U.S. Capitol, the crowd started chanting, among other things, that the law enforcement officers' "oaths were to protect us, not them." WATSON further explained, "I mean, it is to protect all of us, but not if they're committing treason."

f.    WATSON claimed that at one point, law enforcement officers began spraying tear gas and mace into the crowd. WATSON stated someone "on our side, just yelled, 'Charge,' and everybody starts going up to the left under the Inauguration

---

[1] I know from public sources that Alex Jones is a radio show host who operates the website *InfoWars* and that several social media companies have removed *InfoWars* content from their platforms or applications based on the companies' findings that the content promoted conspiracy theories or disinformation. According to public source reporting, Jones promoted protesting outside the U.S. Capitol on January 6.

bleachers . . . and it's like 100 people there getting stopped, and they're all, and I assumed at the top was 'cause of riot shields holding people back, but we just started all pushing and pushing and pushing and eventually got through that one area and then they kind of made another little line and then we pushed on that line and then they gave up and after that one, they gave up, completely, and moved the rest of the barricades climbing up the steps toward the building and then ushered us, like made hand motions for us to go in."

g.      WATSON stated he then approached the U.S. Capitol building and began banging on windows, "trying to get people to hear me."  After someone else in the crowd busted windows and the doors nearby, WATSON went into the U.S. Capitol building through a broken window.

h.      At some point after entry, WATSON stated that he arrived in a hallway with several other individuals from the crowd and encountered several law enforcement officers.  WATSON stated that some of the individuals in the crowd that arrived with him had shields and batons and that one man had a spear and was dressed like a Viking.  WATSON stated that, when they arrived in the hallway, "the police are freaking out because it looks like an armed crowd running in there and, at that point, was when I went straight up to the first cop and literally got on my knees and was like, 'listen, I want to be peaceful here, we have to be peaceful here.  I want to help you get these people peaceful so that we can have a conversation."  WATSON claimed that, at that point, he worked with the law enforcement officer for approximately 30 minutes to get people to calm down.

i.      WATSON stated that, eventually, the officers escorted him and others out of

the building and let them leave.

j.       During the interview, WATSON identified himself in the below photograph[2] as the individual in the yellow sweatshirt. He identified the individual next to him in the photograph as "Viking man."



k.       When asked whether WATSON received any guidance or direction from others to participate in or to cause violence or criminal activity, WATSON responded, "No, it was kind of just what the mob was doing. I was, I was there, helping push on their backs." WATSON also stated he had no prior knowledge the event would turn violent and that, in hindsight, he would have stayed back "from the area where people were charging at."

---

[2] The red arrow has been added to the screenshot to clearly identify for the Court the individual your affiant has identified as WATSON.

8

l.  WATSON claimed that, in his opinion, the event turned violent because of law enforcement's "aggressive use of tear gas and pepper balls and mace."

14.  On January 11, 2021, before he was taken into custody for violating his bond conditions in the state criminal case described above, WATSON consented to a search of his residence. In the residence, your affiant found a yellow sweatshirt matching that in the photograph above. A photo of the sweatshirt as it was found in WATSON's residence is below:



15.  On January 12, 2021, your affiant interviewed U.S. Capitol Police Officer 1 (hereinafter, "USCPO 1"), who was present in the hallway within the U.S. Capitol pictured in the photograph above.

a.  USCPO 1 stated that he encountered a group of individuals in the hallway that included a man with a beard and wearing a mustard yellow sweatshirt.

9

      b.      USCPO 1 stated that when he asked if anyone in the crowd had weapons, the man pulled out a can of pepper spray and showed it USCPO 1. USCPO 1 stated he asked the man to give USCPO 1 the pepper spray, but the man did not hand it over and put it back in his sweatshirt pocket. USCPO 1 stated that he did not know whether the man heard his request to turn over the pepper spray.

      c.      USCPO 1 stated that the man was quiet and reserved and helped USCPO 1 try to calm the crowd.

16. I have reviewed a video posted on YouTube that was recorded by another participant in the breach of the U.S. Capitol on January 6, 2021.[3] WATSON can be seen in the video moving toward the U.S. Capitol Building as the police barriers outside were breached by the crowd. I recognize WATSON as the individual in the video based on my personal interactions with him and the mustard yellow sweatshirt he is wearing.

      a.      In the video, WATSON can be seen holding an item that appears to be a canister and doing something to the top of it, as seen in the screenshot below[4]:

---

[3] The video is available here: https://www.youtube.com/watch?v=PfiS8MsfSF4 (last visited on January 16, 2021).

[4] The red arrow has been added to the screenshot to clearly identify for the Court the individual your affiant has identified as WATSON.

10



b.  Later in the video, WATSON can be seen holding up the canister in the direction of law enforcement officers as WATSON and the crowd breach another barrier on the U.S. Capitol Grounds and move toward the U.S. Capitol Building:



17.  On January 15, 2021, WATSON was interviewed again by your affiant after waiving his *Miranda* rights while still in the custody of state of Alabama on the bond revocation in his state criminal case. The interview was recorded.

11

a.      During the interview, WATSON admitted to having a can of mace at the U.S. Capitol building on January 6, 2021.

b.      Your affiant showed WATSON the screenshots in Paragraph 16 above in which WATSON appears to be holding a canister.

c.      Upon reviewing the first screenshot, WATSON stated that someone had given him a can of mace and that he had no idea how to work it. WATSON first claimed that the screenshot depicted him, "asking others if they knew how to work [the mace] and if they wanted it."[5] Later during the interview, WATSON admitted that he was trying to figure out how to work the canister in case he needed to use it against "someone who attacked me."

d.      Upon reviewing the second screenshot, WATSON was asked what was in his hand. He first responded, "I'm guessing it's the same can of mace, but I don't know." When asked if he would have had more than one can of mace, WATSON responded, "No." WATSON also stated that, at the point of the second screenshot, the law enforcement officers had begun removing the barriers and WATSON and the crowd were moving toward the U.S. Capitol Building.

e.      WATSON later acknowledged that, in the second screenshot, he had the can of mace pointed out and explained that he had it that way as "more of, like a, don't fucking do anything to me type thing. Not necessarily a threat, but like, a threat of definitely going to defend myself if one of y'all decides to shoot some mace at me or something." WATSON also stated that it was directed "to the officers, I reckon."

---

[5] Based on your affiant's review of the video described above, WATSON does not appear to speak to anyone else in the crowd while he had the canister in his hand and was facing the camera. There were times in the video, however, where WATSON was off-screen or had his back to the camera in which your affiant could not observe whether he was talking to others.

12

WATSON also stated that he was scared and didn't know what was going on at that point and that he never figured out how to use the mace.

f.      WATSON stated that, once inside the U.S. Capitol, the law enforcement officer with whom he spoke in a hallway, as described above, asked if WATSON had any weapons. WATSON stated that he told the officer he had the can of mace someone threw to him, but that WATSON had no plan to use it. WATSON did not believe he ever showed the officer the mace, but could not recall for sure. WATSON denied being asked to turn over the mace to law enforcement while in the U.S. Capitol.

g.      WATSON claimed that he did not tell your affiant about the mace during the January 11 interview when I asked what WATSON had with him at the U.S. Capitol "out of not thinking of it or fear, either of the two." When asked what fear WATSON was referring to, WATSON stated, "More punishment, I guess, because I knew I didn't use it on anybody, but I didn't want it to fuck me up, I guess, if I said I had mace, so I figured I'd just leave it out."

h.      WATSON also admitted during the January 15 interview to having a pocket knife on his waistband while at the U.S. Capitol, which he further described as a "flip box cutter" and Gerber knife. WATSON used his hands to show how large the knife was and your affiant observed him to be describing a knife of about three to four inches in length. According to WATSON, he used the knife to help tear down cloth around the Presidential Inauguration scaffolding so the crowd could move further up toward the U.S. Capitol Building.

18.     During the January 15 interview, WATSON stated that the mace he had carried on

13

his person at the U.S. Capitol on January 6, 2021, was at his residence, on his desk, by his computer. He consented to another search of his residence so that your affiant could locate the mace. Pursuant to WATSON's consent, I searched his residence the same day but could not locate the mace. Upon entering WATSON's residence, it appeared to your affiant that someone had entered the residence and removed several items since WATSON had been taken into custody and law enforcement had conducted its search on January 11, 2021. For example, the computer that WATSON told your affiant would be present on the desk with the mace canister was not in the residence when your affiant conducted a search on January 15, 2021.

19. I know from my training and experience that mace and pepper spray can cause serious bodily injury to include: the immediate closing of the eyes, choking, gagging, grasping for breath, inflammation and acute burning sensations of the affected skin, and burning and swelling of mucous membranes. These effects can render the victim of the spray disabled.

## CONCLUSIONS OF AFFIANT

20. Based on the foregoing, your affiant submits that there is probable cause to believe that WATSON violated:

    a. 18 U.S.C. § 231(a)(3), which makes it a crime to commit or attempt to commit, any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects the performance of any federally protected function;

    b. 18 U.S.C. § 1752(a) & (b)(1)(A), which makes it a crime to (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do;

(2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; (3) knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions, obstruct or impede ingress or egress to or from any restricted building or grounds; or (4) knowingly engage in any act of physical violence against any person or property in any restricted building or grounds; or attempt or conspire to do so; and to use or carry a deadly or dangerous weapon or firearm during and in relation to any of the foregoing. For purposes of Section 1752 of Title 18, a restricted building includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance; and

c. 40 U.S.C. § 5104(e)(2)(D), which makes it a crime for an individual or group of individuals to willfully and knowingly (A) enter or remain on the floor of either House of Congress or in any cloakroom or lobby adjacent to that floor, in the Rayburn Room of the House of Representatives, or in the Marble Room of the Senate, unless authorized to do so pursuant to rules adopted, or an authorization given, by that House; (B) enter or remain in the gallery of either House of Congress in violation of rules governing admission to the gallery adopted by that House or pursuant to an authorization given by that House; (C) with the intent to disrupt the

orderly conduct of official business, enter or remain in a room in any of the Capitol Buildings set aside or designated for the use of— (i) either House of Congress or a Member, committee, officer, or employee of Congress, or either House of Congress; or (ii) the Library of Congress; (D) utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress; (E) obstruct, or impede passage through or within, the Grounds or any of the Capitol Buildings; (F) engage in an act of physical violence in the Grounds or any of the Capitol Buildings; or (G) parade, demonstrate, or picket in any of the Capitol Buildings.

21. As such, I respectfully request that the court issue an arrest warrant for WATSON.

The statements above are true and accurate to the best of my knowledge and belief.

_____
SPECIAL AGENT MATTHEW MINSHEW
FEDERAL BUREAU OF INVESTIGATION

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this <u>17th day</u> of January, 2021.

_____

ZIA M. FARUQUI

U.S. MAGISTRATE JUDGE